## OLSEN v. OLSEN.

### (Third Division. Valdez. June 20, 1909.)

### No. 272.

1. HUSBAND AND WIFE (§ 283*)—SEPARATE MAINTENANCE.

> In Alaska a wife may have a decree for separate maintenance and support against the husband, when he willfully and without just cause abandons and deserts her, and refuses to aid or support her as his wife, and without her fault. Actual and unjustifiable desertion is sufficient ground for separate maintenance.

> [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1062–1073; Dec. Dig. § 283.*]

This is an action for separate maintenance of a wife, the plaintiff herein. The facts are sufficiently stated in the opinion.

Edmund Smith, for plaintiff.

Ostrander & Donohoe, for defendant.

OVERFIELD, District Judge. The important question, arising at the outset of the case, is whether this court has jurisdiction to grant relief in an action for separate maintenance, where a divorce is not sought.

The provisions of the Codes of Alaska with respect to the question of divorce were adopted by Congress from the Oregon Codes on June 6, 1900. In 1889 Oregon passed a statute

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

covering the question of separate maintenance, which Congress saw fit to eliminate when providing a Civil Code for the territory of Alaska. Admittedly, if the power to grant separate maintenance exists in this case, it must be by virtue of the equity jurisdiction of the district courts of Alaska.

While, so far as the records show, this is the first time the subject has been before the Alaskan courts, it is by no means unknown in the States. It is one of the questions upon which we find a wide difference of opinion among the judiciary and eminent text-writers, with the result that the states are divided; some recognizing the jurisdiction as inherent in the courts of equity, while others have passed statutes similar to that of Oregon.

"For every wrong there is a remedy, and for every injustice an adequate and salutary relief," is held by the authorities forming the affirmative of the question, as they also maintain that the husband is bound by the strongest obligations, resulting not alone from the contract of marriage, but founded upon the highest moral consideration, to support his wife. Judge Story, in his work on Equity Jurisprudence, recognized the jurisdiction reposed in courts of equity on this question in no uncertain terms. When comparing the laws of our country to those of England, he uses the following language:

"In America, a broader jurisdiction in cases of alimony has been asserted, in some of our courts of equity; and it has been held that, if a husband abandons his wife and separates himself from her without any reasonable support, a court of equity may in all cases decree her a suitable maintenance and support out of his estate, upon the very ground that there is no adequate or sufficient remedy at law in such a case, and there is so much good sense and reason in this doctrine that it might be wished it were generally adopted."

This wish, expressed by Judge Story, has obtained in a large majority of the states.

The argument that there is an adequate remedy at law is advanced by the attorney for the defendant in this case, and

that in any event here the remedy should be in asking for a divorce.

To the question of the adequacy of the law action, it has been said repeatedly, with force and conviction, that to confine the right of the wife for her support and maintenance to any action or actions at law, for the supplies furnished her by third parties, is to subject the wife to penury and want and encourage divorces. Granting for the moment that the wife desires a divorce from the husband who has deserted her without cause, she is obliged in our courts to wait the statutory period of two years, during which time the law would so far fail to protect the wife that the unscrupulous husband could dispose of all of his real estate and remove all his assets from the jurisdiction.

The common-law remedy, permitting the wife to secure from third parties the necessaries of life when deserted by her husband, is open to the criticism, universally advanced, that the wife is dependent upon public opinion to secure from local business firms the necessaries of life. Whether she obtains the desired credit depends upon the view the merchant might entertain of the propriety and rights in the separation of the husband and wife, and the reluctance of people to take sides in such questions of personal affairs.

The same question must be again presented for judicial decision when the merchant attempts to collect his bill from the husband. To entitle the creditor to recover, he must present for decision in a law action the identical question now under consideration in this suit, viz.: Was the husband justified in deserting his wife? If not, he pays; otherwise, he is not liable. Repeated suits would necessarily ensue during the interim, and thus a multiplicity of actions result.

Another reason that urges the equity jurisdiction of this court on principle and right is that entitling the wife to conscientious scruples against the severance of the marriage ties,

and the hope that, during the time she may be separately maintained by the husband, he may again return to her and resume the interrupted course of their married life.

It may be noted at this point that the remedy at law is also quite as inadequate to protect the husband as the wife. If he has grounds for justifying this abandonment and desertion of his wife, he is compelled to justify in each suit brought by his wife's creditors, resulting in expenses, loss of time, and annoyances for which he cannot be compensated.

These reasons carry weight and conviction, entitling the wife to maintain her right of action for separate maintenance, when unjustly abandoned and deserted by the husband, under and by virtue of the equity jurisdiction reposed in the district court of Alaska.

It is contended, with reason and logic, by the defendant, that the jurisdiction must be qualified in so far that it can attach only in those cases where the wife is not at fault. This, however, necessitates the taking of evidence in order to pass upon the question of jurisdiction.

The defendant's offer to return to the plaintiff, made in his answer and denied by the plaintiff in her reply, will be noted as presenting, by the evidence adduced at the hearing, a question necessitating a close consideration of the life, history, and acts of the parties since their marriage, prior to the time of the offer and acceptance on December 7, 1908.

The testimony shows the plaintiff and defendant to have been married in Boston in 1886. The defendant was then a young man; the wife, somewhat his senior. Their home continued in and about Boston until 1898, when the defendant decided, with the consent of his wife, to sell certain real estate accumulated by their joint endeavors and saving, from which he realized $1,500 in cash, and make a trip to the Alaska gold fields.

Up to this time their married life seems to have been uneventful. Both were industrious and frugal; the wife handling the money up to the time of the sale of the real estate. Of the amount received by the defendant, he spent $350 in outfitting for his trip, and took $1,000 in cash. The wife was provided with $500 in cash and deeded an unimproved lot, probably worth $250, on which the plaintiff has since paid the taxes. Their only child was a young daughter.

At the time of the defendant's departure, the family were living in rooms of an apartment house the defendant had built under contract, for which he paid the rent by keeping the building in repair. This arrangement naturally terminated after his departure.

The defendant returned from his first trip to Alaska in the fall of 1899 with but $30, and lived with the plaintiff and their daughter until the February following. When departing again for the North in the spring of 1900, he had occasion to borrow from the plaintiff the sum of $300, a part of the original $500 given her by the defendant in 1898, to which she alleges she had added by removing from the rooms of the apartment and keeping a rooming house. There is no contention but that the husband made the second trip with the consent of the wife.

Of the $300 received by the defendant, $100 was returned from Seattle, and the balance from Valdez in November, 1900.

A correspondence was kept up between the wife and daughter and the defendant until the fall of 1904, when the defendant ceased writing to plaintiff, giving as his reason the plaintiff's continual fault-finding that he had not made a success of his search for gold; also her lack of sympathy for him in his trials and hardships as a prospector.

On August 1, 1907, the defendant, in answer to a letter from the plaintiff, wrote to her that there had been a mistake in their marriage because of the great difference in their

ages, a fact he did not know at the time of their marriage. He accuses her of such knowledge, and blames her for allowing him to enter into the marital ties.

He continues, alleging their married life to have been unpleasant and unhappy, and assuming some of the fault in the following words:

"I admit was unreasonable at times, perhaps mostly on account of ignorance and stubbornness, and a most miserable heart."

Continuing:

"Nevertheless, I will offer you one proposition, as so many years have passed, and do not ever intend to live with you or any other woman any more."

In the closing paragraph he continues:

"And, further, if you should think me unreasonable, as you perhaps will, and not do what is best for us both—seek a divorce from me on the ground of my desertion, which I will not contest—I can go into the hills and spend the rest of my miserable life. I have lost all ambition, and want to be free."

Desertion takes place both in departure and intention. After departure, the intention announced constitutes the desertion from that time. 14 Cyc. p. 16.

Later in the fall of 1907 the defendant returned to Boston, and, though he saw the daughter often, he studiously avoided the wife, calling at the house to see the daughter when the wife was absent.

During the month of June following, the mother became suspicious of a proposed trip by the daughter, and after repeated attempts, and after the train had been boarded, finally succeeded in obtaining the information, in a monosyllabic answer to a direct question, that her daughter was going to Valdez, Alaska. The mother succeeded in arranging her affairs and followed the daughter across the continent, arriving in Seattle, Wash., the day after her daughter's arrival.

The mother and daughter occupied the same stateroom on

a steamer from Seattle to Valdez, and on their arrival at the latter port were met at the dock by the defendant. As to what transpired between the plaintiff and defendant in this reunion for the first time since February, 1900, there is a sharp contrast in their testimony, nor does the daughter come forward with any assistance.

It is evident, however, that an altercation began almost immediately, and a discussion followed as to the amount the plaintiff should be provided by the defendant to enable her to immediately return to Boston; the wife demanding $400 to pay her expenses coming and returning, while the defendant offered $150. There can be no doubt, from the defendant's own testimony, that he neither desired nor offered to receive the plaintiff as his wife, and either live with her or provide her with a home. Neither is there any doubt that he deliberately planned the trip to Alaska for the daughter and provided her with the means, and did not intend the wife and mother to know of her departure.

The plaintiff and her daughter were taken to a local hotel, where the defendant had provided rooms for himself and daughter in anticipation of her arrival. Here the plaintiff remained a few days, in no way provided with food or money by the defendant. Upon securing work by the day, she moved into the Mills house, then belonging to the defendant.

On July 14th following the defendant disposed of this property and his other real estate in order to prevent the plaintiff from obtaining any relief, and Mills, to whom the defendant deeded the house plaintiff was then occupying, at once attempted to and did evict the plaintiff, and upon replacing her belongings she was again annoyed in the extreme, and action brought against her by Mills in the commissioner's court, in which action she was acquitted.

The defendant denies his participation or connivance in these actions by Mills to annoy the plaintiff; but it is apparent that

he could have prevented them, and, taking into consideration all his acts towards the plaintiff since August 7, 1907, it is not drawing on one's imagination to conceive that he was the real instigator in attempting to make life unbearable for Mrs. Olsen, in order that she might leave the country.

The plaintiff continued to labor by day's work about town until the time of the hearing before this court on December 7, 1908, when the defendant offered to resume the marital relation with the plaintiff. After the presiding judge had called the parties into his chambers and effected an apparent reconciliation, the defendant deeded the Mills house and lot to the plaintiff, and they left for their home.

There is evidence that the defendant had made an offer to the plaintiff, two days before the hearing, to again live with her; but he entirely failed to provide necessaries, such as blankets, a cook stove, etc., which were reasonable requests, under all the testimony.

The evidence is not in accord as to what really happened when the parties left the courtroom on December 7th to take up their broken ties and live together in the house deeded to plaintiff; but there can be no question but that the plaintiff had doubts as to the bona fides of the defendant's offer, and, while she was willing to be a wife to him, she desired to know first whether he was not simply making the offer to defeat her efforts in this suit, and it cannot be denied but that the defendant's previous conduct justified her in her suspicions. Without going further into details, his subsequent conduct, in my judgment, based on all the evidence produced at the trial, justified her impressions that his offer was for a purpose other than to be her husband, and to provide a home for herself and daughter. The good faith of the husband is always a question of fact, to be decided upon all the evidence. Wilson v. Wilson, 67 Ill. App. 522; Taylor v. Taylor, 4 Desaus. (S. C.) 167; Elliott v. Elliott, 48 N. J. Eq. 231, 21 Atl. 381; Parker v.

Parker, 57 N. J. Eq. 577, 42 Atl. 160; Briggs v. Briggs, 24 S. C. 377.

This is especially true where the offer is made to defeat a suit. Jelineau v. Jelineau, 2 Desaus. (S. C.) 45.

To the allegation of the defendant that the plaintiff filed an affidavit in the cause, to the effect that she did not resume the marital relations with the defendant because of reasons not specifically given, I think it fair to this plaintiff that the defendant should have convinced her of his sincerity and made the advances. The testimony does not show that he did either, but, on the contrary, shows that at the time of their reunion the plaintiff was perfectly willing to be to the defendant everything that a wife could or should be to her husband.

The wife should treat with respect the offer of the husband; but, if made with bad grace, her right of action is not thereby prejudiced. McMullin v. McMullin, 123 Cal. 653, 56 Pac. 554; Sweasey v. Sweasey, 126 Cal. 123, 58 Pac. 456.

The actions of the defendant, from the time they left the courthouse until he finally again deserted the plaintiff and took up his residence in the rear of his carpenter shop, are to be viewed with suspicion and criticism. During this interval the plaintiff continued to labor and furnish even the necessaries, while the defendant failed in his duties either to supply provisions or to make the house comfortable by making certain necessary repairs, which he could easily have made. In fact, his actions would lead one to believe that he remained as long as he did for a purpose only, and against his real feelings and inclinations.

Under such a condition of affairs, I do not think the wife is in any way estopped by her actions, or statements, in saying she did not cohabit with the defendant, but, on the contrary, that the evidence sustains her contention at the trial that she expected to and was willing to resume the marital relations with the defendant, when he convinced her of his good faith.

I think the demands upon her part, under all the circumstances, were reasonable. I am not prepared to say that the plaintiff would have been entirely blameless, had the husband's offer been in good faith, and his actions been towards her as would become a husband under the then existing conditions.

The conclusion of the matter is that the defendant has become tired of his wife, and because of her advanced age and infirmities, to no small extent brought on prematurely by and through her efforts to aid in sustaining the family and give him a chance to make his future in the gold fields of Alaska. Similar facts are found in the case of Hagle v. Hagle, 68 Cal. 588, 9 Pac. 842.

He would now rob her, not only of her husband, but also of her daughter. Whether such a breach has been made that it cannot be repaired is not a question that a court can answer; but, pending the time he shall return to this wife and give to her the treatment and home due her, taking into consideration his ability and surrounding circumstances, he must support the plaintiff.

Actual and unjustifiable desertion of the wife by the husband has been held sufficient grounds for separate maintenance in the following states: South Carolina, Iowa, Alabama, Missouri, Kentucky, Pennsylvania, New Jersey, Nebraska, and Illinois.

Nor does the fact that she has for a long time supported herself and child without his assistance make her claim any the less meritorious. Kimble v. Kimble, 17 Wash. 75, 49 Pac. 216. But her income is a factor to be taken into account in finding the amount of alimony and maintenance. Milliron v. Milliron, 9 S. D. 181, 68 N. W. 286, 62 Am. St. Rep. 863.

The facts do not warrant less than a passing notice that the defendant has already, either willingly or otherwise, provided the plaintiff with a house and lot, providing a modest home, in the town of Valdez. The question arises: What, under the

3 A.R.—40

evidence in the case, is a reasonable amount for the maintenance of the plaintiff during their continued separation?

It is correctly contended, I believe, that both maintenance and counsel fees are not granted as a matter of course, as in a divorce proceeding, but to compel the performance of a duty upon equitable grounds, in view of the situation of the parties, Such are the decisions in the following states: Alabama, District of Columbia, Florida, Illinois, Kentucky, Missouri, New Jersey, South Dakota, New York, and South Carolina.

Therkelsen v. Therkelsen, 35 Or. 75, 54 Pac. 885, 57 Pac. 373, alone holds that maintenance can be given only for the future, no matter how the wife may have eked out an existence. Other authorities, too numerous to cite here, are not in accord with this view.

The defendant paid into court the $200 in obedience to the order of December 23, 1908, and $48.85 under the subsequent orders of June 3, 1909, directing him to pay $40 per month, beginning March 1, 1909.

There are extenuating circumstances appearing why the defendant will not be fined for contempt in his failure to obey the order of June 3, 1909, the terms of which are herein modified; but he will be held to a strict compliance with the terms of the order to be entered in this cause.

The court now vacates the previous order, entered in this cause June 3, 1909; good cause appearing why the amount therein ordered to be paid to plaintiff by the defendant should be decreased. Viewing the defendant's circumstances financially, and the fact of his having already provided the plaintiff with a home, he should pay to the plaintiff a monthly allowance of $25, beginning on the 1st day of February, 1910, and the further sum of $150, to be paid to the plaintiff on or before February 1, 1910, to cover the expenses incurred by the plaintiff for her maintenance since the order of June 3, 1909. The costs of this action are taxed to the defendant, and the

further sum of $150 counsel fees, to be paid by defendant into the registry of the court to the order of the attorney for the plaintiff on or before July 1, 1910.

Let an order be prepared accordingly.